S. CHANDLER VISHER S.B.N.  52957
LAW OFFICES OF S. CHANDLER VISHER
268 Bush St., #4500
San Francisco, California  94104
Telephone: (415) 901-0500
Facsimile: (415) 901-0504
chandler@visherlaw.com

Local Counsel for Plaintiff and the Proposed Class

Ryan M. Kelly -IL Bar 6257931 (Pro Hac Vice to be submitted)
(rkelly@andersonwanca.com)
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501

Counsel for Plaintiff and the Proposed Class

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ERIC B. FROMER CHIROPRACTIC, INC., a California corporation, individually and as the representative of a class of similarly-situated persons, <br><br> Plaintiff, <br><br> v. <br><br> BETTERDOCTOR, INC., a Delaware corporation, and QUEST ANALYTICS, L.L.C., a Delaware limited liability company, <br><br> Defendants. | **Case No.:**  Civ. 20-6131 <br><br> **CLASS ACTION COMPLAINT** |

Plaintiff, ERIC B. FROMER CHIROPRACTRIC, INC., ("Plaintiff"), through its attorneys, brings this action on behalf of itself and all others similarly situated and, except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, BETTERDOCTOR, INC. ("BetterDoctor") and QUEST ANALYTICS, L.L.C. ("Quest Analytics") ( collectively, "Defendants").

**PRELIMINARY STATEMENT**

1. This case challenges Defendants' practice of sending unsolicited advertisements by facsimile.

2. The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 USC § 227 (hereafter "TCPA" or the "Act"), and the regulations promulgated under the Act, prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The Act provides a private right of action and statutory damages of $500 per violation.

3. On or about August 31, 2016, Defendants sent Plaintiff an unsolicited fax advertisement in violation of the TCPA, a true and correct copy of which is attached hereto as Exhibit A. (the "Fax") and made part hereof.  The Fax seeks to have Plaintiff verify its provider information and become part of Defendants' inventory of network providers.

4. Upon information and belief, Defendants have sent, and continue to send, the Fax and other facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the TCPA.

5. Unsolicited faxes damage their recipients.  The recipient of an unsolicited fax (junk fax) loses the use of its fax machine, paper, and ink toner.  An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.  Unsolicited faxes intrude into the recipient's seclusion, violates the recipient's right to privacy, occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

6. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA.

7. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA. This action seeks relief expressly authorized by the TCPA, namely, (i) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA, and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

9. Venue is proper in this District because Defendants committed statutory torts within this district, and a significant portion of the events took place within this District.

10. Intradistrict Assignment: Pursuant to Civil L.R. 3-2(c) and 3-5(b), assignment to the San Francisco Division of the Northern District of California (the "Division") is proper, because a substantial part of the events or omissions which give rise to the claims occurred in this Division. Defendants promote, market, and sell products and/or services in this Division, employ worker in this Division, and advertise in this Division. Further, Defendant BetterDoctor maintains its office in this Division.

## PARTIES

11. Plaintiff, Eric B. Fromer Chiropractic, Inc., is a California corporation.

12. On information and belief, Quest Analytics is a Delaware limited liability company with its principal place of business in Appleton, Wisconsin. Quest Analytics is the

leading provider of network access and adequacy services to health plans and insurance regulatory agencies.

13. On information and belief, BetterDoctor is a Delaware corporation, with its principal place of business in San Francisco, California. BetterDoctor provides "directory data to ensure health plans, health systems, provider groups, and doctors are regulation-compliant and can provide patients with care they're looking for." [1]

14. Quest Analytics, L.L.C. acquired BetterDoctor, Inc. in June, 2018. (*Id.*).

**FACTS**

15. On information and belief, Defendants are contracted by America's Health Insurance Plans and other participating health plans to update provider directories on a regular basis.

16. One way in which Defendants update provider directories is by sending faxes to healthcare providers requesting that they verify their information. These faxes are part of Defendants overall marketing campaign to make their products and services more desirable to consumers by growing their network of providers.

17. Plaintiff, and the Class, do not need to use Defendant's services or become part of Defendants' network in order to verify their provider information to health plans; they can verify their information on their own.

18. On August 31, 2016, BetterDoctor sent Plaintiff an unsolicited facsimile, seeking to have Plaintiff use its services to verify provider information. (Exhibit A). Page one of the August 31 fax contains in bold "Attn: Office Manager THIRD NOTICE Your July-September provider data update is now outstanding." Page two of the fax is a letter addressed to the Practice Manager. In it, it states "I was asked to verify your information by one or more health plans that you contract with as required by California Senate Bill 137 and Medicare Advantage. I've sent you two faxes in the past two weeks explaining the new state regulations with instructions on how to verify your information online, but haven't received your response yet. Please verify your

---

[1] Information from BetterDoctor's website at www.betterdocter,com (last visited August 31, 2020).

information today." The Fax further states that "[t]o save you the trouble of verifying your records with each health plan separately, follow the steps below." The fax additionally states that "[f]ailure to verify your information will be reported to health plans." The fax provides Plaintiff with BetterDoctor's website and an access code to submit its verification to BetterDoctor. The fax also provides, on a separate sheet, frequently asked questions. On each fax sheet, BetterDoctor is clearly displayed.

19. The August 31 fax does not contain any type of opt-out language.

20. The August 31 fax is part of Defendants overall marketing campaign to make their products and services more desirable to consumers by growing their network of providers. On that basis, the fax is an advertisement under the TCPA and the regulations implementing the TCPA.

21. The August 31 fax is an offer to provide free services in order to make Defendants products, goods, and services more marketable. On that basis, the fax is an advertisement under the TCPA and the regulations implementing the TCPA.

22. Plaintiff did not give "prior express invitation or permission" to either BetterDoctor or Quest Analytics to send the August 31 fax.

23. Defendants created or made the Faxes, or directed a third party to do so, and each was sent by or on behalf of Defendants or with Defendants' full knowledge and authorizations.

24. On information and belief, Defendants faxed the same and other unsolicited facsimiles without the required opt-out language to Plaintiff and more than forty other recipients.

25. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

26. Defendants' facsimile did not display a proper opt-out notice as required by 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

**CLASS ACTION ALLEGATIONS**

27. In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, and/or (4) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4).

Excluded from the Class are Defendants, their employees and agents, and members of the Judiciary. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

28. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

29. <u>Commonality (Fed. R. Civ. P. 23(a)(2))</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

   a) Whether Defendants sent unsolicited fax advertisements;

   b) Whether Defendants' faxes sent to other persons, not the Plaintiff, constitute advertisements;

   c) Whether Defendants' faxes advertised the commercial availability or quality of Defendants' property, goods, or services;

   d) Whether Defendants faxed advertisements without first obtaining the recipient's prior express invitation or permission;

   e) Whether Defendants sent the unsolicited faxed advertisements knowingly or willfully;

   f) Whether Defendants violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

   g) Whether the fax contains an "opt-out notice" that complies with the

requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

  h) Whether Defendants should be enjoined from faxing advertisements in the future;

  i) Whether Plaintiff and the other members of the class are entitled to statutory damages; and

  j) Whether the Court should award treble damages.

 30. <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>:  Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same faxes as the faxes sent by or on behalf of Defendants as part of Defendants overall marketing campaign to make their products and services more desirable to consumers during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. Defendants have acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

 31. <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>:  Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

 32. <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>:  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

  a) Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

  b) Evidence regarding defenses or any exceptions to liability that Defendants may assert and attempt to prove will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

c) Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

d) The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

e) This case is inherently manageable as a class action in that:

(i) Defendants identified persons or entities to receive the fax transmissions and it is believed that Defendants' computer and business records will enable the Plaintiff to readily identify class members and establish liability and damages;

(ii) Liability and damages can be established for Plaintiff and the class with the same common proofs;

(iii) Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv) A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v) A class action will contribute to uniformity of decisions concerning Defendants' practices; and

(vi) As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227 *et seq.***

33. The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement …" 47 U.S.C. § 227(b)(1)(C).

34. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47

U.S.C. § 227(a)(5).

35. **Opt-Out Notice Requirements.** The TCPA, as amended by the JFPA, strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in §(b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

1. a statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

2. a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

3. a statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order, 21 F.C.C.R. 3787, 2006 WL 901720), which rules and regulations took effect on August 1, 2006. The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon consumers and businesses giving them the right, and means, to stop unwanted fax advertisements.

36. **2006 FCC Report and Order.** The TCPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the TCPA, including the TCPA's Opt-Out Notice

1  Requirements and the FCC did so in its 2006 Report and Order, which in addition provides
2  among other things:

3      A.  The definition of, and the requirements for, an established business
4  relationship for purposes of the first of the three prongs of an exemption to liability under §
5  (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship"
6  precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006
7  Report and Order ¶¶ 8-12 and 17-20);

8      B.  The required means by which a recipient's facsimile telephone number
9  must be obtained for purposes of the second of the three prongs of the exemption under §
10 (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes
11 the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and
12 Order ¶¶ 13-16);

13     C.  The things that must be done in order to comply with the Opt-Out Notice
14 Requirements for the purposes of the third of the three prongs of the exemption under §
15 (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes
16 the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and
17 Order ¶¶ 24-34);

18     As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-
19 Out Notice Requirements cannot claim the exemption from liability contained in § (b)(1)(C) of
20 the Act.

21     37. **The Fax**. Defendants sent the Fax on or about August 31, 2016, via facsimile
22 transmission from telephone facsimile machines, computers, or other devices to the telephone
23 lines and facsimile machines of Plaintiff and members of the Plaintiff Class. The Fax constituted
24 an advertisement under the Act and the regulations implementing the Act. Defendants failed to
25 comply with the Opt-Out Requirements in connection with the Fax. The Fax was transmitted to
26 persons or entities without their prior express permission or invitation and Defendants are
27 precluded from sustaining the established business relationship safe harbor with Plaintiff and
28 other members of the class, because of the failure to comply with the Opt-Out Notice

Requirements.  By virtue thereof, Defendants violated the TCPA and the regulations promulgated thereunder by sending the Faxes via facsimile transmission to Plaintiff and members of the Class. Plaintiff seeks to certify a class which includes this Fax and all others sent during the four years prior to the filing of this case through the present.

38.   **Defendants' Other Violations.**  Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone lines and facsimile machines of members of the Plaintiff Class other faxes that constitute advertisements under the TCPA that were transmitted to persons or entities without their prior express invitation or permission and without complying with the Opt-Out Notice Requirements.  By virtue thereof, Defendants violated the TCPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that Defendants may be continuing to send unsolicited advertisements via facsimile transmission in violation of the TCPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

39.   The TCPA provides a private right of action to bring this action on behalf of Plaintiff and the Plaintiff Class to redress Defendants' violations of the Act, and provides for statutory damages.  47 U.S.C. § 227(b)(3). The TCPA is a strict liability statute, so Defendants are liable to Plaintiff and the other class members even if their actions were only negligent.

40.   Defendants knew or should have known that (a) Plaintiff and the other class members had not given prior express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods or services; (b) Defendants transmitted advertisements; and (c) the Faxes did not contain the required Opt-Out Notice.

41.   Defendants' actions caused injury to Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes.  Moreover, Defendants' faxes occupied Plaintiff's and each class member's telephone lines and fax machines. Defendants' faxes cost Plaintiff and each class

member time, as Plaintiff and its employees, as well as each class member and their employees, wasted their time receiving, reviewing and routing Defendants' unauthorized faxes. That time otherwise would have been spent on Plaintiff's and each of the class member's business or personal activities. Defendants' faxes intruded into Plaintiff's and other class members' seclusion and violated their right to privacy, including their interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of Defendants' advertisements occurred outside of Defendants' premises.

WHEREFORE, Plaintiff, ERIC B. FROMER CHIROPRACTIC, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, BETTERDOCTOR, INC. and QUEST ANALYTICS, L.L.C., jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, trebled due to Defendants' knowing violation, whichever is greater;

C. That the Court enjoin Defendants from additional violations; and

D. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Respectfully submitted,
ERIC B. FROMER CHIROPRACTIC, INC., a California corporation, individually and as the representative of a class of similarly-situated persons

By: _s/ S. Chandler Visher_
S. CHANDLER VISHER
LAW OFFICES OF S. CHANDLER VISHER
268 Bush St., #4500
San Francisco, California  94104
Telephone: (415) 901-0500
Facsimile: (415) 901-0504
chandler@visherlaw.com

*Local Counsel for Plaintiff*

| | |
|---|---|
| 1 | |
| 2 | RYAN M. KELLY (*pro hac vice to be submitted*) |
|   | ANDERSON + WANCA |
| 3 | 3701 Algonquin Road, Suite 500 |
|   | Rolling Meadows, IL  60008 |
| 4 | Telephone:  847-368-1500 / Fax:  847-368-1501 |
|   | rkelly@andersonwanca.com |
| 5 | |
| 6 | *Counsel for Plaintiff* |

-13-